**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:17-cv-23006-MGC**

JESSICA DIPUGLIA,
individually and on behalf of all
others similarly situated,                                    **CLASS ACTION**

       Plaintiff,                                    **JURY TRIAL DEMANDED**

v.

US COACHWAYS, INC.,
a foreign corporation,

       Defendant.
_____/

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF**
**CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, Jessica Dipuglia, on behalf of herself and a class of similarly situated persons, with the consent of Defendant, US Coachways, Inc., ("Coachways"), respectfully requests entry of an order granting preliminary approval of the class action settlement set forth in the Parties' Settlement Agreement ("Settlement Agreement" or "Agreement"), certifying a class for settlement purposes, and providing for issuance of Notice to the Settlement Class.[1]

I.    **INTRODUCTION**

After hard-fought litigation and with the help of well-respected mediator Steven Jaffe, the Parties reached the proposed Settlement.  The Settlement Agreement makes a total of $600,000.00 available to Settlement Class Claimants ("Cash Benefit") and provides for $2,000,000.00 in US Coachways Credits ("Coachways Credits") to all Settlement Class Members. The costs of Settlement Administration, Notice Administration, attorney's fees and costs, and a Service Award shall be paid separately by Coachways, pending Court approval.  If

---

[1] The Agreement is attached as *Exhibit A*.  All capitalized terms used herein have the same definitions as those defined in the Agreement.

approved, the Settlement will bring an end to what has otherwise been, and likely would continue to be, contentious and costly litigation centered on unsettled legal questions.

This motion seeks the entry of an order providing for, among other things:

1. Preliminary Approval of the Settlement;

2. Preliminary certification of a Settlement Class and appointment of the Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel;

3. Approval of the Settlement Administrator, Notice Administrator and Escrow Agent;

4. Approval of the Notice program describing:

   a. The Settlement and the Settlement Class members' rights with respect to the Settlement;

   b. The proposed Release of claims;

   c. Class Counsel's request for attorneys' fees and expenses, as well a Service Award for the Class Representative; and

   d. The procedure for opting-out of or objecting to the Settlement

5. Approval of the Claims process; and

6. The scheduling of a Final Approval Hearing to consider Final Approval of the Settlement.

The Parties' proposed Settlement is exceedingly fair and well within the range of Preliminary Approval for several reasons. *See* Declaration of Scott Edelsberg ¶ 2, attached hereto as *Exhibit B*. First, it provides relief for Settlement Class Members where their recovery, if any, would otherwise be uncertain, especially given Coachways' ability and willingness to continue its vigorous defense of the case. Second, the Settlement was reached only after first engaging in extensive pre-litigation discovery, formal discovery, extensive briefing, and extensive arm's-length negotiations, including a full-day mediation session. Third, the Settlement was not conditioned on any amount of attorneys' fees for Class Counsel or Service Award for Plaintiff, which speaks to the fundamental fairness of the process. Edelsberg Decl. ¶ 3.

For all of these reasons, and as further described below, Plaintiff respectfully requests that the Court preliminarily approve the Settlement.

II.    **BACKGROUND**

   a. **Facts**

The Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and its

2

implementing regulations were enacted by Congress and the Federal Communications Commission to "offer consumers greater protection from intrusive telemarketing calls…."[2] Plaintiff alleged that during the period between February 6, 2017 to August 7, 2017, to market its services, Coachways initiated a text message marketing campaign whereas autodialed text messages were sent to Plaintiff and 19,796 other individuals. Plaintiff alleged that this text message marketing campaign violated the TCPA because the texts were sent to consumers without their express written consent.

### b. Procedural History

On August 4, 2017, Plaintiff initiated this litigation against Coachways in the United States District Court for the Southern District of Florida, alleging violations of the TCPA, and seeking, *inter alia,* monetary damages. [DE #1]. After seeking a brief extension of time, [DE #16], Coachways filed a Motion to Dismiss, [DE #20], which was fully briefed by October 3, 2017. [DE #21, 23].

On August 22, 2017, the Court entered a Scheduling Order and Order Referring Case to Mediation. [DE #12, 13].

Discovery commenced in August 2017.  Class Counsel served written discovery and documents requests and subpoenas for documents and depositions on Coachways and Coachways' vendors.

In response, Coachways produced numerous pages of paper and electronic documents and data that were reviewed by Class Counsel. Although the Parties scheduled a discovery hearing to resolve outstanding discovery issues, [DE #31], the Parties ultimately reached an agreement and cancelled the hearing. [DE #32].

On January 31, 2018, Plaintiff filed her Motion for Partial Summary Judgment, [DE #43], and her Motion for Class Certification under seal. [DE #46]. Defendant moved for an extension of time to respond to both of these motions. [DE #48].

On February 12, 2018, the Parties participated in an all-day mediation in Miami with mediator Steven Jaffe. At mediation, the Parties reached an agreement to settle the Action, and executed a term sheet memorializing their understanding.  The next day, the Parties filed a Notice of Settlement with the Court [DE #51]  Following further extensive negotiations and

---

[2]  Federal Communications Commission, Small Entity Compliance Guide for the TCPA (dated May 13, 2013), https://apps.fcc.gov/edocs_public/attachmatch/DA-13-1086A1.pdf.

discussions, the Parties resolved all remaining issues, culminating in the signing of the Settlement Agreement.

### III.    SUMMARY OF THE SETTLEMENT TERMS

The following is a summary of the material terms of the Settlement.

#### a.    The Settlement Class

The proposed Settlement establishes a Settlement Class as follows:

All persons in the United States who had one or more Coachways Text Messages sent to their cellular telephone number between February 6, 2017 through and including August 7, 2017.

Agreement ¶ 47.  The  following are excluded from the Settlement Class: (1) any  judge or magistrate judge of the United States their spouses, and persons within the third degree of relationship to either of them; (2) Coachways, as well as any parent, subsidiary, affiliate or control person of Coachways, and the officers, directors, agents, servants or employees of Coachways; (3) any of the Released Parties; (4) the immediate family of any such person(s); (5) any Settlement Class Member who has timely and properly opted out of this Settlement; and (6) Class Counsel and their employees.

#### b.    Settlement Consideration

Pursuant to the Settlement, Coachways has agreed to make available $600,000.00 to Settlement Class Claimants. Additionally, Coachways shall make $2,000,000.00 worth of Coachways Credits available to Settlement Class Members. The Coachways Credits shall not expire for a period of two (2) years from the date of the Final Approval Order, shall be fully transferable, and can be used on multiple occasions until fully exhausted.  The Coachways Credits shall not have a cash redemption value, partial or otherwise, and shall only be used for services offered by Coachways. Agreement ¶ 51-53.

#### c.    The Notice Program

Pending this Court's approval, Hilsoft Notifications will serve as the Notice Administrator, and will be responsible for administrating the Notice Program.  The Notice Program consists of two different components: (1) Mailed Notice, and (2) Long-Form Notice. Agreement ¶ 41.  The forms of the proposed Mailed Notice, and Long-Form Notices, agreed upon by Class Counsel and Coachways, subject to this Court's approval and/or modification, are attached to the Settlement Agreement as Exhibits 1-2.  The Notice Administrator has 19,796

telephone numbers that received at least one Coachways Text Message and each subscriber of each unique telephone number will receive one or more forms of notice.  Edelsberg Decl. ¶ 4.

The Notice program is designed to provide the Settlement Class with important information regarding the Settlement and their rights thereunder, including a description of the material terms of the Settlement; a date by which Settlement Class members may exclude themselves from or "opt-out" of the Settlement Class; a date by which Settlement Class Members may object to the Settlement, Class Counsel's fee application and/or the request for a Service Award; the date of the Final Approval Hearing; information regarding the Settlement Website where Settlement Class members may access the Agreement, and other important documents. Agreement ¶¶ 24, 65-69; Edelsberg Decl. ¶ 5.

### i. Mailed Notice

A majority of the members of the Settlement Class will receive Mailed Notice, which shall consist of a direct mail postcard.  A copy of the Mailed Notice is attached to the Settlement Agreement as Exhibit 1.  The Settlement Administrator will be provided with a large number of mailing addresses for Settlement Class members and will determine the remaining Settlement Class members' addresses by conducting a "Reverse Append" address look-up and comparing those addresses with the U.S. Post Office's National Change of Address database.  Individuals who receive Mailed Notice may visit the Settlement Website (www.DipugliaTCPAsettlement.com) to complete and submit an electronic Claims Form. Agreement ¶ 45.

In the event postcards are returned for insufficient addresses, the Notice Administrator will attempt to identify a better address for the Settlement Class member and will re-mail the postcard to that address ("Notice Re-mailing Process").  The Mailed Notice Program (which is composed of both the Initial Mailed Notice and the Notice Re-mailing Process) shall be completed no later than 45 days before the Final Approval Hearing.  Agreement ¶ 67.

### ii. Long-Form Notice

The Mailed Notice will contain the address for the Settlement Website, www.DipugliaTCPAsettlement.com.  On the website, Settlement Class members will find important documents and court filings, including the Long-Form Notice, which will contain more detail than the Mailed Notice.  A copy of the Long Form Notice is attached to the Settlement Agreement as Exhibit 2.

### iii.   Settlement Website & Toll-Free Telephone Number

The Settlement Administrator will establish a Settlement Website as a means for Settlement Class members to obtain notice of, and information about, the Settlement Agreement ¶ 45.  The Settlement Website will be established as soon as practicable following Preliminary Approval, but no later than before commencement of the Notice Program. *Id*. The Settlement Website will include an online portal to file Claim Forms, hyperlinks to the Settlement, the Long-Form Notice, the Preliminary Approval Order, and other such documents as Class Counsel and counsel for Coachways agree to post or that the Court orders be posted on the Settlement Website.  These documents will remain on the Settlement Website at least until Final Approval. *Id*.

The Settlement Administrator will also establish and maintain an automated toll-free telephone line for Settlement Class members to call with Settlement-related inquiries.  *Id*.

### d.   Claims Process

The Claims Process here is straightforward, easy to understand for Settlement Class members, and designed so that they can easily make a Claim.  Edelsberg Decl. ¶ 6.  Settlement Class members will make a claim by submitting a valid Claim Form to the Claims Administrator, which will then be evaluated for timeliness and completeness.  A copy of the Claim Form is attached to the Settlement Agreement as Exhibit 3.  Claim Forms may be mailed via hard copy or submitted electronically on the Settlement Website.  The Claim Form requires basic information from Settlement Class members: (1) name; (2) current address; (3) cellular telephone number(s) at which she or he was sent a Coachways Text Message; and (4) a current contact telephone number.   Once a Settlement Class member submits a Claim Form that is approved by the Settlement Administrator, the Settlement Class Member will then be eligible to receive a cash payment.  In the event a Claim Form is deficient, in that information is missing, inaccurate, or does not match up to a telephone number that received a Coachways Text Message, the Claims Administrator will attempt to contact the Settlement Class member and the Settlement Class member will have another opportunity to submit a valid Claim Form.  Untimely Claim Forms will be rejected and those Settlement Class Members will not receive a Cash Benefit.  Claim Forms must be submitted 60 days after completion of the Deadline for Completion of the Mailed Notice Program.

**e.   Calculation and Distribution of Cash Benefit and Coachways Credit**

Each Settlement Class Member who timely files with the Settlement Administrator a valid Claim Form shall receive a $30.31 cash distribution payable by check. Additionally, each Settlement Class Member shall receive a $101.03 in US Coachways' Credit, whether or not a Claim Form is submitted by that Settlement Class Member. Agreement ¶ 74.

**f.   Settlement Administrator**

Pending this Court's approval, Epiq Class Action & Claims Solutions, Inc., shall serve as the Settlement Administrator.  The Settlement Administrator's responsibilities include:

   i.   obtaining from Coachways cellular telephone information, and to the extent it is available, name, email, and address information, for Settlement Class Members;

   ii.   performing reverse telephone number look-ups by cellular telephone number to determine available associated physical addresses that might exist for any Settlement Class members for whom the Parties do not have email addresses, and verifying and updating the addresses received through the National Change of Address database, for the purpose of providing Mailed Notice;

   iii.   providing Mailed Notice;

   iv.   providing Long Form Notice to Settlement Class members;

   v.   establishing and maintaining the Settlement website;

   vi.   establishing and maintaining a post office box for requests for exclusion from the Settlement Class;

   vii.   receiving, evaluating, and processing Claim Forms;

   viii.   advising Settlement Class members if their Claim Forms are deficient;

   ix.   providing weekly reports about the Notice plan and number and identity of opt-outs (if any) to Class Counsel and Coachways' counsel;

   x.   establishing and maintaining an automated and toll-free telephone line for Settlement Class members to call with Settlement-related inquiries, and answer the questions of Settlement Class members who call with or otherwise communicate such inquiries;

   xi.   responding to any Settlement Class member inquiries;

   xii.   processing all requests for exclusion from the Settlement Class;

   xiii.   at Class Counsel's request in advance of the Final Approval Hearing, preparing an

declaration to submit to the Court that identifies each Settlement Class member who timely and properly requested exclusion from the Settlement Class;

xiv. performing the duties of Escrow Agent as described in this Agreement, and any other Settlement-administration-related function at the instruction of Class Counsel and Coachways, including, but not limited to, verifying that the Cash Benefit and Coachways Credits have been distributed as required;

xv. distributing the Cash Benefit and Coachways Credits; and

xvi. performing tax administration duties described in this Agreement, and any other Settlement-administration and tax-related function at the instruction of Class Counsel and Coachways; and.

xvii. Distribution of any monies owed to Coachways.

Agreement ¶ 41.

### g.  Opt-Out and Objection Procedures

Settlement Class members who do not wish to participate in the Settlement may opt-out of the Settlement by sending a written request to the Settlement Administrator at the address designated in the Notice.  Settlement Class members who timely opt-out of the Settlement will preserve their rights to individually pursue any claims they may have against Coachways, subject to any defenses that Coachways may have against those claims. Settlement Class members who timely opt-out of the Settlement will not receive Coachways Credits. A Settlement Class member must opt-out of the Settlement Class by the Opt-Out Period, which is 30 days prior to the Final Approval Hearing.  The Settlement Administrator will communicate any opt-out requests to Class Counsel, who will in turn report them to the Court as part of the Final Approval Hearing and those names will be referenced in an exhibit to the Final Approval Order.

Settlement Class Members who wish to file an objection to the Settlement must do so no later than thirty (30) days prior to the Final Approval Hearing.  Pending Court approval, for an objection to be considered by the Court, it must include the following:

a. the name of the Action;

b. the objector's full name, address and telephone number;

c. an explanation of the basis upon which the objector claims to be a Settlement Class Member;

d. all grounds for the objection, accompanied by any legal support for the objection known to the objector or his counsel;

e. the number of times in which the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such an objection, and a copy of any orders related to or ruling upon the objector's prior such objections that were issued by the trial and appellate courts in each listed case;

f. the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or fee application;

g. a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections made by individuals or organizations represented by that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding five (5) years the objector's counsel;

h. any and all agreements that relate to the objection or the process of objecting— whether written or oral—between objector or objector's counsel and any other person or entity;

i. the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing;

j. a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing;

k. a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection; and

l. the objector's signature (an attorney's signature is not sufficient).

Agreement. ¶ 64.

###### h.  Release of Claims

In exchange for the Settlement consideration, upon Final Approval, Plaintiff and all Settlement Class Members, each on behalf of himself or herself and on behalf of his or her respective heirs, assigns, beneficiaries, and successors, by operation of Judgment, shall automatically be deemed to have fully, conclusively, finally, forever and irrevocably released, discharged, and relinquished Coachways and the Released Parties and each of their present and

former parents, subsidiaries, divisions, affiliates, predecessors, successors and assigns, and the present and former directors, officers, employees, insurers, shareholders, attorneys, advisors, consultants, representatives, partners, joint venturers, agents, independent contractors, text messaging service providers, wholesalers, resellers, distributors, retailers, predecessors, successors, and assigns of each of them, of and from any and all liabilities, rights, claims, actions, causes of action, demands, damages, costs, attorneys' fees, expenses, costs, controversies, losses, and remedies of any nature whatsover, whether based on any federal law, state law, common law, territorial law, tribal law, foreign law, contract, rule, regulation, statute, any regulator promulgation (including but not limited to, any opinion or declaratory ruling), common law or equity, whether known or unknown, asserted or unasserted, foreseen or unforeseen, actual or contingent, punitive or compensatory, known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, as of the date of the Final Approval, that result from, concern, arise out of, are based upon, or relate to (i) the conduct, omissions, duties or matters at any time from the beginning of the Class Period through the date the Final Order is entered by the Court, that were or could have been claimed, raised, or alleged in this Action to the extent they arise from or relate to text messages sent by or on behalf of Coachways or otherwise advertised products or services of Coachways; (ii) Coachways' use of equipment or methods to contact or attempt to contact Settlement Class Members for bus charters or services or products offered by or on behalf of Coachways from the beginning of the Class Period through the date the Final Order is entered by the Court, including but not limited to claims that related to or arise out of any use of any purported "automatic telephone dialing system" or "artificial or prerecorded voice as defined in the Telephone Consumer Protection Act.  For the avoidance of doubt, "Released Claims" include claims relating to or arising out of the equipment or method used to contact or attempt to contact Settlement Class Members by telephone, email or other method of communication. Agreement ¶ 84.

### i.   Class Counsel Fees and Expenses and Plaintiff's Service Award

Coachways agrees not to oppose Class Counsel's request for attorneys' fees of up to nineteen percent (19%) of the value of the Settlement benefits (Total potential Cash Benefit amount plus Coachways Credits). Any award of attorneys' fees, costs, and expenses to Class Counsel shall be payable separate and apart from the Cash Benefit or Coachways Credits.

Coachways has also agreed not to oppose an application for a Service Award for the Plaintiff up to $5,000.00. Agreement ¶ 94.  The Court should consider whether to grant or deny these awards separate and apart from its consideration of the fairness and reasonableness of the Settlement.

### IV.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

#### a.   The Legal Standard for Preliminary Approval

Rule 23(e) of the Federal Rules of Civil Procedure provides that before a class action may be dismissed or compromised, notice must be given in the manner directed by the court, and judicial approval must be obtained. Fed. R. Civ. P. 23(e).  As a matter of public policy, courts favor settlements of class actions for their earlier resolution of complex claims and issues, which promotes the efficient use of judicial and private resources. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also 4 Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).

Approval of a class action settlement is a two-step process. *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, at *4 (S.D. Fla. 2007).  Preliminary approval is the first step, requiring the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Id*. (citations omitted).  In the second step, after notice to settlement class members and time and opportunity for them to object or otherwise be heard, the court considers whether to grant final approval of the settlement as fair and reasonable under Rule 23. *Id*.

The standard for granting preliminary approval is low—a proposed settlement will be preliminarily approved if it falls "within the range of possible approval" or, otherwise stated, if there is "probable cause" to notify the class of the proposed settlement and "to hold a full-scale hearing on its fairness[.]" *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (quoting MANUAL FOR COMPLEX LITIGATION § 1.46 at 62, 64-65 (1982)); *see also* NEWBERG ON CLASS ACTIONS § 13:13 (5th ed. 2016) ("Bearing in mind that the primary goal at the preliminary review stage is to ascertain whether notice of the proposed settlement should be sent to the class, courts sometimes define the preliminary approval standard as

determining whether there is 'probable cause' to submit the [settlement] to class members and [to] hold a full-scale hearing as to its fairness."). Thus, "[p]reliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are not obvious deficiencies, and the settlement falls within the range of reason." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661-62 (S.D. Fla. 2011).

Class Counsel and Coachways respectfully request that the Court take the first step in the process and grant Preliminary Approval of the Settlement. The Settlement is clearly within the range of reasonableness, and satisfies all standards for Preliminary Approval.

### b.  The Settlement Satisfies the Criteria for Preliminary Approval

Each of the relevant factors weighs heavily in favor of Preliminary Approval of this Settlement. First, the Settlement was reached in the absence of collusion, and is the product of good-faith, informed and arm's length negotiations by competent counsel. Furthermore, a preliminary review of the factors related to the fairness, adequacy and reasonableness of the Settlement demonstrates that it fits well within the range of reasonableness, such that Preliminary Approval is appropriate. Edelsberg Decl. ¶ 7.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Plaintiff and Class Counsel believe that the claims asserted are meritorious and that Plaintiff would prevail if this matter proceeded to trial. Coachways argues that Plaintiff's claims are unfounded, denies any liability, and has shown a willingness to litigate vigorously. Edelsberg Decl. ¶ 8.

The Parties concluded that the benefits of the Settlement outweigh the risks and uncertainties attendant to continued litigation that include, but are not limited to, the risks, time and expenses associated with completing trial and any appellate review. Edelsberg Decl. ¶ 9.

### c.  The Settlement Agreement is the Product of Good Faith, Informed and Arm's Length Negotiations

A class action settlement should be approved so long as a district court finds that "the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977);[3] *see also Lipuma v. American Express Co*., 406 F. Supp. 2d 1298, 318-19 (S.D. Fla. 2005) (approving class settlement where

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981.

the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel").

The Settlement here is the result of extensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action. Edelsberg Decl. ¶ 10. The Parties engaged in formal mediation before an experienced and respected mediator. The mediation and the negotiations were arm's-length and extensive. *See Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator").

Furthermore, Class Counsel are particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases. Edelsberg Decl. ¶ 11 and Exhibit 1. Class Counsel zealously represented their client throughout the litigation, and throughout the discovery process, which included review of numerous pages of documents and electronic data. Edelsberg Decl. ¶ 12.

In negotiating this Settlement, Class Counsel had the benefit of years of experience in litigating and settling complex class actions and a familiarity with the facts of the Action. Edelsberg Decl. ¶ 13 and Exhibit 1. As detailed above, Class Counsel conducted a thorough analysis of Plaintiff's claims and engaged in extensive discovery with Coachways and third parties. *Id*. ¶ 14. Class Counsel's review of that discovery enabled them to gain an understanding of the evidence related to central questions in the Action, and prepared them for well-informed settlement negotiations. *See Francisco v. Numismatic Guaranty Corp. of America*, 2008 WL 649124, *11 (S.D. Fla. Jan. 31, 2008) (stating that "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation" where counsel conducted two 30(b)(6) depositions and obtained "thousands" of pages of documentary discovery); Edelsberg Decl. ¶ 15.

      **d.**  **The Facts Support a Preliminary Determination that the Settlement is Fair, Adequate and Reasonable**

The Settlement falls within the "range of reason" such that notice and a final hearing as to the fairness, adequacy and reasonableness of the Settlement is warranted.

13

### i.  Likelihood of Success at Trial

Class Counsel are confident in the strength of Plaintiff's case, but are also pragmatic in their awareness of the various defenses available to Coachways, and the risks inherent in trial and post-judgment appeal. Edelsberg Decl. ¶ 16.  The success of Plaintiff's claims, turn on questions that would arise at summary judgment, trial and during an inevitable post-judgment appeal.  Further, it still remains unclear whether Plaintiff would be able to certify a class for resolution of the asserted claims at trial.  Under the circumstances, Class Counsel appropriately determined that the Settlement outweighs the risks of continued litigation. Edelsberg Decl. ¶ 17.

Even if Plaintiff and the Settlement Class prevailed at trial, any recovery could be delayed for years by an appeal. *Lipuma*, 406 F. Supp. 2d at 1322 (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement).  This Settlement provides substantial relief to Settlement Class Members, without further delay.

### ii.  Range of Possible Recovery and the Point on or Below the Range of Recovery at Which a Settlement is Fair

When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330.  "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.*

Courts have determined that settlements may be reasonable even where plaintiffs recover only part of their actual losses.  *See Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate").  "The existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable." *Lipuma*, 406 F. Supp. 2d at 1323.

The $600,000.00 cash recovery, plus the $2,000,000.00 in Coachways Credits in this case is more than reasonable, given the complexity of the litigation and the significant risks and barriers that loomed in the absence of settlement including, but not limited to, the pending motion for class certification, a motion for summary judgment, *Daubert* motions, trial as well as appellate review following a final judgment.  Edelsberg Decl. ¶ 18.

There can be no doubt that this Settlement is a fair and reasonable recovery in light of Coachways' defenses, the uncertainty of class certification, and the challenging and

14

unpredictable path of litigation Plaintiff and all Settlement Class members would face absent a settlement. Edelsberg Decl. ¶ 19.

### iii. Complexity, Expense and Duration of Litigation

The traditional means for handling claims like those at issue here would tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the claims of the individual class members, would be impracticable. Thus, the Settlement is the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner. Edelsberg Decl. ¶ 20.

### iv. The Defendant May Not Be Able To Withstand A Judgment

The ability of Coachways to withstand a substantially greater judgment is by no means assured. While Plaintiff has no concern that Coachways has the ability to pay all claims made in the context of this Settlement Agreement, Coachways cannot bear the large statutory and compensatory damages award that could be assessed if the case were to proceed through trial with a plaintiff's verdict.

### v. Stage of Proceedings

Courts consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324.

The Settlement was reached only after discovery, including the production and review of numerous pages of documents and electronic data produced by Coachways and third-parties, depositions of the parties, the parties' disclosure of experts and expert reports, and extensive class certification and summary judgment briefing. As a result, Class Counsel were extremely well-positioned to confidently evaluate the strengths and weaknesses of Plaintiff's claims and prospects for success at trial and on appeal. Edelsberg Decl. ¶ 21.

### e. Certification of the Settlement Class is Appropriate

For settlement purposes, Plaintiff and Class Counsel respectfully request that the Court certify the Settlement Class defined in paragraph 35 of the Agreement. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Certification of the proposed Settlement Class will allow notice of the Settlement to issue to inform Settlement Class members of the existence and terms of the Settlement, of their right to object and be heard on its fairness, of their right to opt-out, and of the date, time and place of the Final Approval Hearing. *See Manual for Compl. Lit.*, at §§ 21.632, 21.633.  For the reasons set forth below, certification is appropriate under Rule 23(a) and (b)(3).

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the members of the class predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of approximately 19,796 individuals, and joinder of all such persons is impracticable. *See* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (citation omitted).  Here, the commonality requirement is readily satisfied.  There are multiple questions of law and fact – centering on Coachways text messaging marketing program – that are common to the Settlement Class, that are alleged to have injured all Settlement Class members in the same way, and that would generate common answers.

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory");

*Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members"). Plaintiff is typical of absent Settlement Class members because she received Coachways Text Messages and claims to have suffered the same injuries, and because they will all benefit from the relief provided by the Settlement.

Plaintiff and Class Counsel also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) relates to (1) whether the proposed class representative has interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant*, 202 F.R.D. at 314. Edelsberg Decl. ¶ 22, Exhibit 1. The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted). Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and the absent Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests.  Further, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions.  Class Counsel devoted substantial time and resources to vigorous litigation of the Action.

Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc*., 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted).  Plaintiff readily satisfies the Rule 23(b)(3) predominance requirement because liability questions common to all Settlement Class members substantially outweigh any possible issues that are individual to each Settlement Class member. Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class.

**f.   The Court Should Approve the Proposed Notice Program**

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit*. § 21.312 (internal quotation marks omitted).   The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950).  To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt-out of the action." *Twigg v. Sears, Roebuck & Co*., 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted); *see also* Manual for Compl. Lit., § 21.312 (listing relevant information).

The Notice program satisfies all of these criteria.  As recited in the Settlement and above, the Notice Program will inform Settlement Class members of the substantive terms of the Settlement.  It will advise Settlement Class members of their options for remaining part of the Settlement Class, for objecting to the Settlement, Class Counsel's Attorneys' fee application and/or request for Service Award, or for opting-out of the Settlement, and how to obtain additional information about the Settlement.   The Notice Program is designed to reach a high percentage of Settlement Class members, and exceeds the requirements of Constitutional Due Process. Therefore, the Court should approve the Notice Program and the form and content of the Notices.

**V.   Proposed Schedule of Events**

In connection with Preliminary Approval of the Settlement, the Court should also set a date and time for the Final Approval Hearing.   Other deadlines in the Settlement approval process, including the deadlines for requesting exclusion from the Settlement Class or objecting to the Settlement, will be determined based on the date of the Final Approval Hearing or the date on which the Preliminary Approval Order is entered.   Class Counsel propose the following schedule:

18

| Event | Date |
|---|---|
| Deadline for Completion of Mailed Notice Program | 45 days prior to the Final Approval Hearing |
| Deadline for filing papers in support of Final Approval of the Settlement and Class Counsel's application for an award of attorneys' fees and expenses | 45 days prior to the Final Approval Hearing |
| Deadline for opting-out of Settlement and submission of objections | 60 days after the Deadline for Completion of Mailed Notice Program |
| Responses to Objections | 15 days prior to the Final Approval Hearing |
| The Final Approval Hearing | Approximately 120 days after Preliminary Approval |
| The last day that Settlement Class members may submit a Claim Form to the Settlement Administrator. | 60 days after the Deadline for Completion of Mailed Notice Program |

## VI.    Conclusion

Based on the foregoing, Plaintiff and Class Counsel respectfully request that the Court: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) approve the Notice program set forth in the Agreement and approve the form and content of the Notices and Claim Form, attached to the Settlement Agreement as Exhibits 1-3; (4) approve and order the opt-out and objection procedures set forth in the Agreement; (5) appoint Plaintiff, Jessica Dipuglia, as Class Representative; (6) appoint as Class Counsel the law firms and attorneys listed in paragraph 7 of the Agreement; and (7) schedule a Final Approval Hearing during the week of May 14, 2018.  A Proposed Preliminary Approval Order is attached hereto as *Exhibit C*.

Dated: April 5, 2018.

Respectfully submitted,

**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**

*/s/ Scott Edelsberg* _____
Jeffrey M. Ostrow, Esq.
Florida Bar No. 121452
ostrow@kolawyers.com
Scott A. Edelsberg, Esq.
Florida Bar No. 100537
edelsberg@kolawyers.com
1 W. Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
(t) 954-449-4602
*Counsel for Plaintiff and the Class*

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis, Esq.
Florida Bar No. 101754
*efilings@sflinjuryattorneys.com*
14 NE 1st Avenue, Suite 400
Miami, Florida  33132
(t) (305) 479-2299

**HIRALDO P.A.**
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301

mhiraldo@hiraldolaw.com
Telephone: 954.400.4713

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of April, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I also certify that the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Scott Edelsberg* _____
Scott A. Edelsberg, Esq.
Florida Bar No. 100537
edelsberg@kolawyers.com
1 W. Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301