# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:17-cv-23006-MGC

JESSICA DIPUGLIA,
individually and on behalf of all
others similarly situated,                                    **CLASS ACTION**

      Plaintiff,                                         **JURY TRIAL DEMANDED**

v.

US COACHWAYS, INC.,
a foreign corporation,

      Defendant.

_____/

### PLAINTIFF AND CLASS COUNSEL'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND APPLICATION FOR SERVICE AWARD, ATTORNEY'S FEES AND EXPENSES, AND INCORPORATED MEMORANDUM OF LAW

During the course of contested litigation, Plaintiff on behalf of approximately 19,796 consumers who received unauthorized marketing text messages from Defendant, US Coachways, Inc., ("Coachways"), Plaintiff, and Class Counsel negotiated the Settlement Agreement and Release, attached as *Exhibit A* ("Agreement" or "Settlement").[1]  The Settlement – which makes a total of $600,000.00 available to Settlement Class Claimants ("Cash Benefit") and provides for $2,000,000.00 in US Coachways Credits ("Coachways Credits") to all Settlement Class Members – is a great result for the Settlement Class.  *See* Declaration of Scott Edelsberg ¶ 2, attached as *Exhibit B* ("Edelsberg Decl.").  Additionally, the costs of Settlement Administration, Notice Administration, attorney's fees and costs, and a Service Award shall be paid separately by Coachways, pending Court approval.  If approved, the Settlement will bring an end to what has otherwise been, and likely would continue to be, contentious and costly litigation.

Plaintiff and Class Counsel now seek Final Approval of the Settlement.  Class Counsel also request that the Court award a Service Award to the Class Representative, whose willingness to

---

[1] All capitalized terms used herein have the same meanings as those defined in the Agreement.

represent the Settlement Class and participation in the Action helped make the Settlement possible. Finally, Class Counsel request that the Court award attorneys' fees and approve the reimbursement of certain expenses incurred in prosecuting the Action.

## I.     INTRODUCTION

The Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and its implementing regulations were enacted by Congress and the Federal Communications Commission to "offer consumers greater protection from intrusive telemarketing calls...."[2]  Plaintiff alleged that during the period between February 6, 2017 to August 7, 2017, to market its services, Coachways initiated a text message marketing campaign in which autodialed text messages were sent to Plaintiff and 19,795 other individuals. Plaintiff alleged that this text message marketing campaign violated the TCPA because the texts were sent to consumers without their express written consent.  After hard-fought litigation, the parties engaged in an all-day mediation before well-respected mediator, Steve Jaffe, and reached a Settlement. On April 30, 2018, the Court granted Preliminary Approval to the Settlement, directed that notice be provided to the Settlement Class, and established a deadline for the filing of a motion for Final Approval of the Settlement. [DE #58].

Plaintiff and Class Counsel now request that the Court: (1) grant Final Approval to the Settlement; (2) certify for settlement purposes the Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) appoint the Plaintiff as Class Representative; (4) appoint as Class Counsel the attorneys listed in paragraph 7 of the Agreement; (5) approve the Plaintiff's requested Service Award; (6) award Class Counsel attorneys' fees and reimbursement of certain expenses; and (7) enter Final Judgment dismissing the Action with prejudice.

The Parties' proposed Settlement is exceedingly fair and well within the range of Final Approval for several reasons. *See* Edelsberg Decl. ¶ 2. First, it provides relief for Settlement Class Members where their recovery, if any, would otherwise be uncertain, especially given Coachways' ability and willingness to continue its vigorous defense of the case.  Second, the Settlement was reached only after first engaging in extensive pre-litigation discovery, formal discovery, extensive briefing, and extensive arm's-length negotiations, including a full-day mediation session.  Third, the Settlement was not conditioned on any amount of attorneys' fees for Class Counsel or Service Award for Plaintiff, which speaks to the fundamental fairness of the process. Edelsberg Decl. ¶ 3.

---

[2]  Federal Communications Commission, Small Entity Compliance Guide for the TCPA (dated May 13, 2013), https://apps.fcc.gov/edocs_public/attachmatch/DA-13-1086A1.pdf.

## II.     BACKGROUND FACTS AND PROCEDURAL HISTORY

On August 4, 2017, Plaintiff initiated this litigation against Coachways in the United States District Court for the Southern District of Florida, alleging violations of the TCPA, and seeking, *inter alia,* monetary damages. [DE #1]. After seeking a brief extension of time, [DE #16], Coachways filed a Motion to Dismiss, [DE #20], which was fully briefed by October 3, 2017. [DE #21, 23].

On August 22, 2017, the Court entered a Scheduling Order and Order Referring Case to Mediation. [DE #12, 13].

Discovery commenced in August 2017.  Class Counsel served written discovery and documents requests and subpoenas for documents and depositions on Coachways and Coachways' vendors.  Coachways also propounded comprehensive discovery on Plaintiff.

In response, Coachways produced numerous pages of paper and electronic documents and data that were reviewed by Class Counsel. Although the Parties scheduled a discovery hearing to resolve outstanding discovery issues, [DE #31], the Parties ultimately reached an agreement and cancelled the hearing. [DE #32].

On January 31, 2018, Plaintiff filed her Motion for Partial Summary Judgment, [DE #43], and her Motion for Class Certification under seal. [DE #46]. Defendant moved for an extension of time to respond to both of these motions. [DE #48].

On February 12, 2018, the Parties participated in an all-day mediation in Miami with mediator Steven Jaffe. At meditation, the Parties reached an agreement to settle the Action, and executed a term sheet memorializing their understanding.  The next day, the Parties filed a Notice of Settlement with the Court [DE #51]  Following further extensive negotiations and discussions, the Parties resolved all remaining issues, culminating in the signing of the Settlement Agreement.

On April 5, 2018, the Parties executed the Settlement Agreement. [DE #57-1]. On the same day, Plaintiff filed her Unopposed Motion for Preliminary Approval of the Class Action Settlement and Incorporated Memorandum of Law ("Motion for Preliminary Approval"). [DE #57]. On April 30, 2018, the Court entered the Order Preliminarily Approving Class Action Settlement and Certifying the Settlement Class ("Preliminary Approval Order"). [DE #58]. The Preliminary Approval Order, *inter alia*, directed the Notice be given to the Settlement Class, established deadlines for the filing of the Motion for Final Approval, the timely submission or objections or requests for exclusions, and set a date for the Final Approval Hearing. [DE #58].

### III.   SUMMARY OF THE SETTLEMENT TERMS

The Settlement terms are detailed in the Agreement attached.  The following is a summary of its material terms.

#### 1.   The Settlement Class

The proposed Settlement establishes a Settlement Class as follows:

All persons in the United States who had one or more Coachways Text Messages sent to their cellular telephone number between February 6, 2017 through and including August 7, 2017.

Agreement ¶ 47.  The  following are excluded from the Settlement Class: (1) any  judge or magistrate judge of the United States their spouses, and persons within the third degree of relationship to either of them; (2) Coachways, as well as any parent, subsidiary, affiliate or control person of Coachways, and the officers, directors, agents, servants or employees of Coachways; (3) any of the Released Parties; (4) the immediate family of any such person(s); (5) any Settlement Class Member who has timely and properly opted out of this Settlement; and (6) Class Counsel and their employees.

#### 2.   Settlement Consideration

Pursuant to the Settlement, Coachways has agreed to make available $600,000.00 to Settlement Class Claimants. Additionally, Coachways shall provide $2,000,000.00 worth of Coachways Credits to Settlement Class Members. The Coachways Credits shall not expire for a period of two years from the date of the Final Approval Order, shall be fully transferable, and can be used on multiple occasions until fully exhausted. Agreement ¶ 51-53.

#### 3.   Settlement Notice

The Notice Program was designed to provide the best notice practicable and was tailored to take advantage of the information Coachways had available about Settlement Class members. Agreement ¶¶ 65-69; Edelsberg Decl. ¶ 5.  Coachways has and will continue to pay the fees and costs associated with the Notice Program and Settlement Administration.  Agreement ¶ 56.  The Notice Program was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, the terms of the Settlement, Class Counsel's Attorneys' Fee application and request for Service Award for Plaintiff, and their rights to opt-out of the Settlement Class or object to the Settlement.  *See* Declaration of Cameron Azari ¶¶ 6-12, 32-35, attached as *Exhibit C* ("Azari Decl."); Edelsberg Decl. ¶ 4. The Notices and Notice Program constituted

sufficient notice to all persons entitled to notice, and satisfied all applicable requirements of law including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process. Azari Decl. ¶¶ 32-35.

### 4. Service Award

Class Counsel are entitled to request, and Coachways will not oppose, a Service Award of $5,000 for the Class Representative, Jessica Dipuglia.  Agreement ¶ 94.  If the Court approves it, the Service Award will be paid from the Settlement Fund, and will be in addition to any other relief to which the Class Representative is entitled as a Settlement Class Member.  *Id.*  The Service Award will compensate Class Representative Dipuglia for her time and effort in the Action, and for the risks she undertook in prosecuting the Action against Coachways.

### 5. Attorneys' Fees and Costs

Class Counsel are entitled to request, and Coachways will not oppose, attorneys' fees, costs and expenses of up to nineteen percent (19%) of the Settlement Fund.  Agreement ¶ 92.  The Parties negotiated and reached agreement regarding fees and costs only after agreeing on all other material terms of the Settlement.  Agreement ¶ 95.

### IV.   **Argument**

Court approval is required for settlement of a class action.  Fed. R. Civ. P. 23(e).  The federal courts have long recognized a strong policy and presumption in favor of class settlements. The Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. Unit B 1982).  In evaluating a proposed class settlement, the Court "will not substitute its business judgment for that of the parties; 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'" *Rankin v. Rots*, 2006 WL 1876538, at *3 (E.D. Mich. June 28, 2006) (quoting *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971)).  Indeed, "[s]ettlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977).  Class settlements minimize the litigation expenses of the parties and reduce the strain that litigation imposes upon already scarce judicial resources. Therefore, "federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). The Settlement here is more than sufficient under Rule 23(e)

and Final Approval is clearly warranted.

      **1.**     **The Court Has Personal Jurisdiction Over the Settlement Class Because the Settlement Class Received Adequate Notice and an Opportunity to Be Heard.**

In addition to having personal jurisdiction over the Plaintiff, who is a party to this Action, the Court also has personal jurisdiction over all members of the Settlement Class because they received the requisite notice and due process. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950)); *see also In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 306 (3d Cir. 1998).

      **a.**   **The Best Notice Practicable Was Furnished.**

The Notice program was designed to provide the Settlement Class with important information regarding the Settlement and their rights thereunder, including a description of the material terms of the Settlement; a date by which Settlement Class members may exclude themselves from or "opt-out" of the Settlement Class; a date by which Settlement Class Members may object to the Settlement, Class Counsel's fee application and/or the request for a Service Award; the date of the Final Approval Hearing; information regarding the Settlement Website where Settlement Class members may access the Agreement, and other important documents. Agreement ¶¶ 24, 65-69; Edelsberg Decl. ¶ 5.

The Notice Program consists of two different components: (1) Mailed Notice, and (2) Long-Form Notice. Agreement ¶ 59; Azari Decl. ¶¶ 16-21. The Notice Administrator had 19,796 telephone numbers that received at least one Coachways Text Message and each subscriber of each unique telephone number received one or more forms of notice. Edelsberg Decl. ¶ 6.

Each facet of the Notice Program was timely and properly accomplished. Azari Decl. ¶¶ 9-12, 14-26, 35. The Notice Administrator received data from Coachways that identified the names, and last known addresses of 18,447 identifiable Settlement Class members. Azari Decl. ¶ 12. The Notice Administrator determined the remaining Settlement Class members' addresses by conducting a "Reverse Append" address look-up and comparing those addresses with the U.S. Post Office's National Change of Address database.

Prior to the initial Postcard Notice mailing, the Notice Administrator ran the addresses through the National Change of Address Database and mailed postcards to 17,993 Settlement Class members and emailed an additional 454 Settlement Class members. *Id*. at ¶ 16, 14. In sum,

between the Mailed Notice, Email Notice, and Long Form Notice, approximately 91% of the Settlement Class received notice. *Id*. at ¶ 20.

The Notice Administrator also established the Settlement Website, www.dipugliatcpasettlement.com, which went live on May 30, 2018.  The Long Form Notice, along with other key pleadings, have been and will continue to be available on the Settlement Website or upon request to the Settlement Administrator, to enable Settlement Class members to obtain detailed information about the Action and the Settlement.  Azari Decl. ¶¶ 21-23.  As of July 19, 2018, the Settlement Website had 6,860 unique visitors with a total of 29,299 page views.  *Id*. at ¶ 23.  In addition, a toll-free number, 855-331-3619, was established and has been operational since May 30, 2018.  *Id*. at ¶ 24.  By calling, Settlement Class members are able listen to answers to frequently asked questions and request a copy of the Long Form Notice.  *Id*.  As of July 19, 2018, the toll-free number had handled 102 calls for a total of 226 minutes.  *Id*.

### b. The Notice and Notice Program Were Reasonably Calculated to Inform the Settlement Class of Their Rights.

The Court-approved Notice and Notice Program satisfied due process requirements because they described "the substantive claims . . . [and] contain[ed] information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig*., 552 F.2d at 1104-05. The Notice, among other things, defined the Settlement Class, described the release provided to Coachways under the Settlement, as well as the amount and proposed distribution of the Settlement proceeds, and informed Settlement Class members of their right to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing. It also notified Settlement Class members that a final judgment would bind them unless they opted-out and told them where they could get more information – for example, at the Settlement Website that has a copy of the Agreement, as well as other important documents. Further, the Notice described Class Counsel's intention to seek attorneys' fees of up to nineteen percent of the Settlement Fund, plus expenses, and a Service Award. Hence, Settlement Class members were provided with the best practicable notice that was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Shutts*, 472 U.S. at 812 (quoting *Mullane*, 339 U.S. at 314-15); *see* Azari Decl. ¶¶ 32-35.

As of July 19, 2018, the Settlement Administrator had received one request(s) for exclusion and no objections to the Settlement had been filed.  Edelsberg Decl. ¶ 7; Azari Decl. ¶ 27.  The opt-out and objection periods end on July 30, 2018.

**2.    The Settlement Should Be Approved as Fair, Adequate and Reasonable.**

In deciding whether to approve the Settlement, the Court will analyze whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  A settlement is fair, reasonable and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued."  *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL No. 1290, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003) (quoting *Manual for Complex Litigation (Third)* § 30.42 (1995)).  Importantly, the Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial."  *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citations omitted).

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness and adequacy of a class settlement under Rule 23(e):

(1)    the existence of fraud or collusion behind the settlement;
(2)    the complexity, expense, and likely duration of the litigation;
(3)    the stage of the proceedings and the amount of discovery completed;
(4)    the probability of the plaintiffs' success on the merits;
(5)    the range of possible recovery; and
(6)    the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Leverso*, 18 F.3d at 1530 n.6; *see also Bennett*, 737 F.2d at 986.  The analysis of these factors set forth below shows this Settlement to be eminently fair, adequate and reasonable.

**a.    There Was No Fraud or Collusion.**

This Court is aware of the vigor with which the Parties litigated until they reached the Settlement.  The sharply contested nature of the proceedings in this Action demonstrates the absence of fraud or collusion behind the Settlement.  *See, e.g.*, *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 n.3 (S.D. Fla. 2001); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (court had "no doubt that this case has been adversarial, featuring a high level of

contention between the parties"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 1055 (M.D. Fla. 1988) (record disclosed no evidence of collusion, but to the contrary showed "that the parties conducted discovery and negotiated the terms of settlement for an extended period of time"), *aff'd*, 893 F.2d 347 (11th Cir. 1989).

Class Counsel negotiated the Settlement with similar vigor.  Plaintiff and the Settlement Class were represented by experienced counsel throughout the negotiations.  Class Counsel and Coachways engaged in a formal all-day mediation with Steven Jaffe on February 12, 2018.  All negotiations were arm's-length and extensive. Edelsberg Decl. ¶ 8; *see also Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator").

Furthermore, Class Counsel are particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases.  Edelsberg Decl. ¶ 9 and Exhibit 1.  Class Counsel zealously represented their client throughout the litigation, and throughout the discovery process, which included review of numerous pages of documents and electronic data.  Edelsberg Decl. ¶ 10.

### b.  The Settlement Will Avert Years of Complex and Expensive Litigation.

The claims and defenses in this action are complex; litigating them has been both difficult and time-consuming, and recovery by any means other than settlement would require additional years of litigation.  Edelsberg Decl. ¶ 11.  *See United States v. Glens Falls Newspapers, Inc.*, 160 F. 3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial."); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 317, 325-26 & n.32 (N.D. Ga. 1993) ("[A]djudication of the claims of two million claimants could last half a millennium").

In contrast, the Settlement provides immediate and substantial monetary benefits to the Class.  As stated in *In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D. La. 1993):

> The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.  In this respect, "[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush."

*Id*. at 560 (alterations in original) (quoting *Oppenlander v. Standard Oil Co*., 64 F.R.D. 597, 624 (D. Colo. 1974)).

### c. The Factual Record Is Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment.

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig*., 55 F.3d 768, 813 (3d Cir. 1995). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler*, 822 F. Supp. at 1555.

Class Counsel negotiated the Settlement with the benefit of significant litigation. Edelsberg Decl. ¶ 12. Specifically, the Settlement was reached only after discovery, including the production and review of numerous pages of documents and electronic data produced by Coachways and third-parties, depositions of the parties, the parties' disclosure of experts and expert reports, and extensive class certification and summary judgment briefing. As a result, Class Counsel were extremely well-positioned to confidently evaluate the strengths and weaknesses of Plaintiff's claims and prospects for success at trial and on appeal. Edelsberg Decl. ¶ 13.

### d. Plaintiff and the Class Still Faced Significant Obstacles to Prevailing.

The "likelihood and extent of any recovery from the defendants absent . . . settlement" is another important factor in assessing the reasonableness of a settlement. *Domestic Air*, 148 F.R.D. at 314; *see also Ressler*, 822 F. Supp. at 1555 ("A Court is to consider the likelihood of the plaintiff's success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise.").

Class Counsel believe that Plaintiff had a strong case against Defendant. Edelsberg Decl. ¶ 14. Even so, Class Counsel are mindful that Defendant advanced significant defenses that would have been required to overcome in the absence of the Settlement. *Id*. This Action involved several major litigation risks that loomed in the absence of settlement including, but not limited to, the pending motion for class certification, a motion for summary judgment, *Daubert* motions, trial, as well as appellate review following a final judgment. *Id*. Notably, given the post-settlement developments in the law concerning the TCPA, including *ACA Int'l v. FCC*, 885 F.3d 687, 691 (D.C. Cir. 2018), that struck the 2015 FCC Order that broadened the scope of what constitutes and autodialer, and the conflicting federal decisions interpreting the scope and effect of the *ACA*

decision, there would have been a substantial risk that the software Defendant used to transmit text messages would have been found to not be an autodialer as defined by the TCPA, and therefore, Coachways could not be held liable under the TCPA for the text messages received by Plaintiff and members of the class.

Given the myriad risks attending these claims, as well as the certainty of substantial delay and expense from ongoing litigation, the Settlement cannot be anything but a fair compromise. *See, e.g.*, *Haynes v. Shoney's*, No. 89-30093-RV, 1993 U.S. Dist. LEXIS 749, at *16-17 (N.D. Fla. Jan. 25, 1993) ("The risks for all parties should this case go to trial would be substantial. …. It is possible that trial on the merits would result in … no relief for the class members. … Based on … the factual and legal obstacles facing both sides should this matter continue to trial, I am convinced that the settlement … is a fair and reasonable compromise.").

### e. The Benefits Provided by the Settlement Are Fair, Adequate and Reasonable Compared to the Range of Possible Recovery.

In determining whether a settlement is fair given the potential range of recovery, the Court should be guided by "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Id.* "[T]he court must remember that "compromise is the essence of settlement. A just result is often no more than an arbitrary point between competing notions of reasonableness." *Raines v. Florida*, 987 F. Supp. 1416, 1418 (N.D. Fla. 1997) (citing *Bennett*, 737 F.2d at 986) (internal annotations omitted). This is because fairness of a settlement must be evaluated in light of "the likelihood of success on the merits, the complexity, expense, and duration of litigation, the judgment and experience of trial counsel, and objections raised to the settlement." *Id.* Thus, courts regularly find settlements to be fair where "[p]laintiffs have not received the optimal relief." *Warren*, 693 F. Supp. at 1059; *see, e.g.*, *Great Neck Capital Appreciation Investment P'ship, L.P. v. PriceWaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 409-10 (E.D. Wis. 2002) ("The mere possibility that the class might receive more if the case were fully litigated is not a good reason for disapproving the settlement.").

Class Counsel were well-positioned to evaluate the strengths and weaknesses of Plaintiff's claims, as well as the appropriate basis upon which to settle them. Edelsberg Decl. ¶ 15. Through this Settlement, Plaintiff secured a recovery of what will equate to approximately $131.34 per

Settlement Class Claimant. Edelsberg Decl. ¶ 15. As of the date of this Motion, there are approximately 196 Settlement Class Claimants. When one considers the $60,000 in estimated Notice Administration and Settlement Administration costs that Coachways is paying and that attorney's fees and costs, and Service Award are being paid separately, the Settlement is even more beneficial.

This Settlement provides an extremely fair and reasonable recovery to Settlement Class members when considering Defendant's defenses, as well as the challenging, unpredictable path of litigation that Plaintiff would otherwise have continued to face in the trial and appellate courts. Edelsberg Decl. ¶ 16; *See Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-2440 (VEC), 2017 U.S. Dist. LEXIS 146343, at *35 (S.D.N.Y. Sep. 8, 2017) (a payout of over $232 to each claiming Class Member "is a generous recovery for a minor annoyance and exceeds many other court-approved TCPA class settlements."); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, LEXIS 806549, at *7 (N.D. Ill. 2016) ($52.50 payout for each claimant); *Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 U.S. Dist. LEXIS 50416, at *16 (N.D. Cal. Apr. 15, 2015) ($151 payout for each claimant); *Arthur v. Sallie Mae, Inc.*, 2012 U.S. Dist. LEXIS 132413 (W.D. Wash. Sept. 17, 2012) (approving TCPA settlement where each class claimant estimated to receive between $20 and $40).

Additionally, the ability of Coachways to withstand a substantially greater judgment is by no means assured. While Plaintiff has no concern that Coachways has the ability to pay all claims made in the context of this Settlement Agreement, Coachways cannot bear the large statutory and compensatory damages award that could be assessed if the case were to proceed through trial with a plaintiff's verdict. Thus, the settlement is appropriate given substantial risk that after a judgment for the Plaintiff and the Class that withstands appellate scrutiny could result in the Class Members actually receiving less than they would in this settlement or nothing at all if the judgment put Coachways out of business.

### f. The Opinions of Class Counsel, the Plaintiff, and Absent Settlement Class Members Favor Approval.

Class Counsel strongly endorse the Settlement. Edelsberg Decl. ¶ 17. The Court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren*, 693 F. Supp. at 1060; *see also Domestic Air*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud,

collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (citations omitted).

There has been no opposition to the Settlement.  As of July 19, 2018, there has been only one opt-out and no objections.  Edelsberg Decl. ¶ 18; Azari Decl. ¶ 27. Furthermore, the Settlement Administrator sent the notice required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA Notice"), to 57 federal and state officials, including the Attorneys General of each of the 50 states, the District of Columbia and the U.S. Territories, and the Attorney General of the United States. Azari Decl. ¶ 13. The purpose of CAFA notice is to protect class members from being involved in a settlement that may be deemed unfair or inconsistent with regulatory policies, and to protect consumers from class action abuse, particularly settlements that generate large attorney's fees which consume most of the economic value of the settlement.  Notably, none of those authorities have objected to the Settlement. The lack of any objections from either the class members or the 57 state and federal officials given notice is another indication that the Settlement Class is clearly satisfied with the Settlement. Even if there were some objections, it is settled that "[a] small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness." *Association for Disabled Americans v. Amoco Oil Co*., 211 F.R.D. 457, 467 (S.D. Fla. 2002).

### 3.    The Court Should Certify the Settlement Class.

Plaintiff and Class Counsel respectfully request that the Court certify the Settlement Class. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the class members predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and adjudication of the controversy.

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of approximately 19,796 individuals, and joinder of all such persons is impracticable. *See* Fed. R.

Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (citation omitted).  Here, the commonality requirement is readily satisfied.  There are multiple questions of law and fact – centering on Coachways' text messaging marketing program – that are common to the Settlement Class, that are alleged to have injured all Settlement Class members in the same way, and that would generate common answers.

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members").  Plaintiff is typical of absent Settlement Class members because she received Coachways Marketing Texts and suffered the same injuries as them and because they will all benefit from the relief achieved.

Plaintiff and Class Counsel also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) relates to (1) whether the proposed class representative has interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant*, 202 F.R.D. at 314. Edelsberg Decl. ¶ 19, Exhibit 1. The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted). Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and the absent Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests.  Further, Plaintiff and the Settlement Class are represented by qualified and

competent Class Counsel who have extensive experience and expertise prosecuting complex class actions. Class Counsel devoted substantial time and resources to vigorous litigation of the Action.

Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc*., 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted). Plaintiff readily satisfies the Rule 23(b)(3) predominance requirement because liability questions common to all Settlement Class members substantially outweigh any possible issues that are individual to each Settlement Class member. Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class.

Based on the foregoing, the Settlement is fair, adequate and reasonable.

## V.     APPLICATION FOR SERVICE AWARD

Pursuant to the Settlement, Class Counsel respectfully request, and Defendant does not oppose, a Service Award for the Class Representative in the amount of $5,000. Agreement ¶ 94. Service awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Allapattah Servs., Inc. v. Exxon Corp*., 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006). "[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *David v. American Suzuki Motor Corp*., 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010). Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives. *See, e.g*., *Stallworth v. Monsanto Co.*, No. PCA 73-45. 198) U.S. Dist. LEXIS 12858, at *20-21 (N.D. Fla. June 26, 1980) (approving service awards ranging from $10,000 to $20,000 to four named plaintiffs, "each of whom devoted substantial time to the prosecution of th[e] lawsuit").

The relevant factors include: (1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives expended in pursuing the litigation. *See, e.g*., *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). These factors, as applied to this Action, demonstrate the reasonableness of the requested Service Award to Plaintiff. Edelsberg Decl. ¶ 20.

Plaintiff provided substantial assistance that enabled Class Counsel to successfully prosecute the Action including submitting to interviews with Class Counsel, reviewing all material filings, including approving the Agreement, locating and forwarding responsive documents and information, and attending an all-day deposition.  In so doing, Plaintiff was integral to forming the theory of the case and litigating it through settlement. Edelsberg Decl. ¶ 21.

Plaintiff not only devoted time and effort to the litigation, but the end result of her efforts, coupled with those of Class Counsel, provided a substantial benefit to the Settlement Class. Edelsberg Decl. ¶ 22.  The Service Award of $5,000 is less than 0.0019% of the Settlement Fund, a ratio that falls well below the range of what has been deemed to be reasonable. *See, e.g*., *Enter. Energy Corp. v. Columbia Gas Transmission*, 137 F.R.D. 240, 251 (S.D. Ohio 1991) (approving service awards totaling $300,000, or 0.56% of a $56.6 million settlement).  The Service Award requested here is reasonable.

## VI.      APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

Pursuant to the Agreement and the Notices, and consistent with recognized class action practice and procedure, Class Counsel respectfully request an award of attorneys' fees in the amount of $494,000.00, equal to nineteen percent of the $2,600,000 Settlement Benefits, which also includes reimbursement of limited out-of-pocket costs and expenses totaling $9,239.10 incurred in connection with the prosecution of the Action and in connection with the Settlement. Edelsberg Decl. ¶ 23.  Class Counsel and Defendant negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material Settlement terms. Agreement ¶ 95.

### 1.      The Law Awards Class Counsel Fees from the Common Fund Created Through Their Efforts.

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained.  *Camden I*, 946 F.2d at 771; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  The common benefit doctrine is an exception to the general rule that each party must bear its own litigation costs.  The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts."  *In re Gould Sec. Litig*., 727 F. Supp. 1201, 1202 (N.D. Ill. 1989) (citation omitted).  The common benefit doctrine stems from the premise that those who receive the benefit of a lawsuit without contributing to its costs are "unjustly enriched" at the expense

of the successful litigant.  *Van Gemert*, 444 U.S. at 478.  As a result, the Supreme Court, the Eleventh Circuit, and courts in this District have all recognized that "[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole."  *Sunbeam*, 176 F. Supp. 2d at 1333 (citing *Van Gemert*, 444 U.S. at 478); *see also Camden I*, 946 F.2d at 771 ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval.").  Courts have also recognized that appropriate fee awards in cases such as this encourage redress for wrongs caused to entire classes of persons, and deter future misconduct of a similar nature.  *See, e.g.*, *Mashburn*, 684 F. Supp. at 687; *see also Deposit Guar. Nat'l Bank v. Rope*, 445 U.S. 326, 338-39 (1980).  Adequate compensation promotes the availability of counsel for aggrieved persons:

> If the plaintiffs' bar is not adequately compensated for its risk, responsibility, and effort when it is successful, then effective representation for plaintiffs in these cases will disappear . . . .  We as members of the judiciary must be ever watchful to avoid being isolated from the experience of those who are actively engaged in the practice of law.  It is difficult to evaluate the effort it takes to successfully and ethically prosecute a large plaintiffs' class action suit.  It is an experience in which few of us have participated.  The dimensions of the undertaking are awesome.

*Muehler v. Land O'Lakes, Inc.*, 617 F. Supp. 1370, 1375-76 (D. Minn. 1985).

In the Eleventh Circuit, class counsel are awarded a percentage of the funds obtained through a settlement.  In *Camden I* – the controlling authority regarding attorneys' fees in common-fund class actions – the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case.  Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."  *Camden I*, 946 F.2d at 774.

The Court has discretion in determining the appropriate fee percentage.  "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case."  *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774). However, "[t]he majority of common fund fee awards fall between 20% to 30% of the fund."  *Camden I*, 946 F.2d at 774. The Eleventh Circuit has endorsed the use of the *Johnson* factors, generally used to determine a proper lodestar as "appropriately used in evaluating, setting, and reviewing percentage fee awards in common fund cases."  *Id*. at 775. These factors are:

(1)     the time and labor required;
(2)     the novelty and difficulty of the relevant questions;
(3)     the skill required to properly carry out the legal services;
(4)     the preclusion of other employment by the attorney as a result of his acceptance of the case;
(5)     the customary fee;
(6)     whether the fee is fixed or contingent;
(7)     time limitations imposed by the clients or the circumstances;
(8)     the results obtained, including the amount recovered for the Clients;
(9)     the experience, reputation, and ability of the attorneys;
(10)    the "undesirability" of the case;
(11)    the nature and the length of the professional relationship with the clients; and
(12)    fee awards in similar cases.

*Camden I*, 946 F.2d at 772 n.3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

These 12 factors are guidelines and are not exclusive. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775). The Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Camden I*, 946 F.2d at 775. As applied, the *Camden I* factors support the requested fee.

**a. The Claims Against Defendant Required Substantial Time and Labor.**

Prosecuting and settling these claims demanded considerable time and labor, making this fee request reasonable. Edelsberg Decl. ¶ 24. The organization of Class Counsel ensured that the work was coordinated to maximize efficiency and minimize duplication of effort. Class Counsel devoted substantial time to investigating the claims against Defendant. Class Counsel also expended resources researching and developing the legal claims at issue. Substantial time and resources were also dedicated to conducting discovery. Class Counsel served written discovery and documents requests and subpoenas for documents and depositions on Coachways and Coachways' vendors. In response, Coachways produced numerous pages of paper and electronic documents and data that were reviewed by Class Counsel. Class Counsel moved for partial summary judgment [DE #43], and filed a Motion for Class Certification under seal before the

Parties reached a settlement with the understanding that Coachways would oppose class certification. [DE #46].

Settlement negotiations consumed further time and resources. The mediation session required substantial preparation and document review. Finally, a significant time was devoted to negotiating and drafting of the Agreement and the preliminary approval process, and to all actions required thereafter pursuant to the preliminary approval order.  All of this work consumed a substantial amount of time. Edelsberg Decl. ¶ 25.

All told, Class Counsel's coordinated work paid dividends for the Settlement Class.  Each of the above-described efforts was essential to achieving the Settlement before the Court. Edelsberg Decl. ¶ 26.  The time and resources devoted to this Action readily justify the requested fee.

**b.  The Issues Involved Were Novel and Difficult, and Required the Skill  of Highly Talented Attorneys.**

"[P]rosecution and management of a complex national class action requires unique legal skills and abilities."  *Edmonds v. U.S.*, 658 F. Supp. 1126, 1137 (D.S.C. 1987).  This Court witnessed the quality of our legal work, which conferred a substantial benefit on the Settlement Class in the face of significant litigation obstacles.  Our work required the acquisition and analysis of a significant amount of factual and legal information.

In any given case, the skill of legal counsel should be commensurate with the novelty and complexity of the issues, as well as the skill of the opposing counsel.  Litigation of this Action required counsel trained in class action law and procedure as well as the specialized issues presented here, such as analyzing the evolving and uncertain law under the TCPA.  Class Counsel possess these attributes, and their participation added value to the representation of this Settlement Class.  Edelsberg Decl. ¶ 27. The record demonstrates that the Action involved complex and novel challenges, which Class Counsel met at every juncture.

In evaluating the quality of representation by Class Counsel, the Court should also consider opposing counsel.  *See Camden I*, 946 F.2d at 772 n.3; *Ressler*, 149 F.R.D. at 654.  Throughout the litigation, Defendant was represented by extremely capable counsel.  They were worthy, highly competent adversaries.  Edelsberg Decl. ¶ 28.

**c.  Class Counsel Achieved a Successful Result.**

Given the significant litigation risks Class Counsel faced, the Settlement represents a successful result.  Rather than facing years of costly and uncertain litigation, the Settlement Class

Claimants will receive not only cash, but valuable vouchers. Edelsberg Decl. ¶ 29.   Further, Settlement Class Claimants' recovery will not be reduced by the substantial fees and costs associated with Notice or Settlement administration as Coachways is required to pay such costs separate and apart from the Settlement Fund.   Agreement ¶ 56.

**d.  The Claims Presented Serious Risk.**

The Settlement is particularly noteworthy given the combined litigation risks. Edelsberg Decl. ¶ 30. As discussed, Defendant raised substantial and meritorious defenses. Success under these circumstances represents a genuine milestone.

Consideration of the "litigation risks" factor under *Camden I* "recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk.  Such aversion could be due to any number of things, including social opprobrium surrounding the parties, thorny factual circumstances, or the possible financial outcome of a case.  All of this and more is enveloped by the term 'undesirable.'" *Sunbeam*, 176 F. Supp. 2d at 1336.

Prosecuting the Action was risky from the outset.  Edelsberg Decl. ¶ 31.  Defendant was confident in their opposition to Plaintiff's motion for class certification and had liability defenses that are far from certain given national state of the law pertaining to what constitutes an autodialer under the TCPA.

The $2,600,000 recovery obtained through the Settlement is substantial, given the complexity of the litigation and the significant risks and barriers that loomed in the absence of Settlement.  Any of these risks could easily have impeded, if not altogether derailed, Plaintiff's and the Settlement Class' successful prosecution of these claims. Furthermore, even a wholly successful litigation could have resulted in Coachways' insolvency, leaving the Class Members with no recovery after investing even more resources into a contested class certification procedure, trial on the merits, and possible appeal.

The recovery achieved by this Settlement must be measured against the fact that any recovery by Plaintiff and Settlement Class Members through continued litigation could only have been achieved if: (i) Plaintiff was able to certify a class and establish liability and damages at trial; (ii) the final judgment was affirmed on appeal; and (iii) the final judgment did not render Coachways insolvent.  The Settlement is an extremely fair and reasonable recovery for the Settlement Class in light of Defendant's defenses.

### e. Class Counsel Assumed Considerable Risk to Pursue This Action on a Pure Contingency Basis.

In undertaking to prosecute this case on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment. Edelsberg Decl. ¶ 32. That risk warrants an appropriate fee.  Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees."  *Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens*, 118 F.R.D. at 548). Public policy concerns – in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims – support the requested fee. The progress of the Action to date shows the inherent risk faced by Class Counsel in accepting and prosecuting the Action on a contingency fee basis. There can be no dispute that this case entailed substantial risk of nonpayment for Class Counsel.

### f. The Requested Fee Comports with Fees Awarded in Similar Cases.

Counsel's requested fee of 19% of the Settlement Fund, which includes the reimbursement of reasonable costs, is within the range of fees typically awarded in similar cases. Edelsberg Decl. ¶ 33. Numerous decisions within and outside of the Southern District of Florida and the Eleventh Circuit have found that a 19% fee is within the range of reason under the factors listed by the *Camden I* court, and 19% is below the 25% benchmark in class action litigation.  "[F]ederal district courts across the country have, in the class action settlement context, *routinely* awarded class counsel fees in excess of the 25 percent 'benchmark.'"[3] *Allapattah Servs., Inc. v. Exxon Corp*., 454 F. Supp. 2d 1185, 1210 (S.D. Fla. 2006) (emphasis added) (awarding fees equaling 31.33%); *Legg v. Laboratory Corp. of America*, 14-cv-61543-RLR, Dkt. 227, p.7 (S.D. Fla. Feb. 18, 2016) (FACTA case awarding one-third of gross recovery for attorneys' fees, plus expenses); *Gevaerts v. TD Bank, N.A.*, No. 11:14-cv-20744-RLR, 2015 U.S. Dist. LEXIS 150354, at *27 (S.D. Fla. Nov. 5, 2015) (finding that a request for 30% of a $20 million dollar fund is justified); *Wolff v. Cash 4 Titles*, No. 03-22778- CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-

---

[3] *See also* 1 *Court Awarded Attorney Fees*, ¶ 2.06[3], at 2-88 (Matthew Bender 2010) (noting that, "when appropriate circumstances have been identified, a court may award a percentage significantly higher" than 25%); 4 *Newberg on Class Actions*, § 14:6, at 551 (4th ed. 2002) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.").

third.") (citing Circuit case law and listing Southern and Middle District of Florida attorneys' fees awards).[4]

Class Counsel's fee request falls within the range of the private marketplace, where contingency fee arrangements often approach or equal forty percent of any recovery. *See Continental*, 962 F.2d at 572 ("The object in awarding a reasonable attorneys' fee . . . is to simulate the market."); *RJR Nabisco, Inc. Sec. Litig.*, Fed. Sec. L. Rep. (CCH) ¶ 94, 268 (S.D.N.Y. 1992) ("[W]hat should govern [fee] awards is . . . what the market pays in similar cases"). And, "[i]n tort suits, an attorney might receive one-third of whatever amount the Plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery." *Blum v. Stenson*, 465 U.S. 886, 904 (1984) (Brennan, J., concurring).

Finally, Class Counsel's fee request also falls within the range of awards in TCPA cases within this Circuit and elsewhere. *See ABC Bartending School of Miami, Inc., v. American Chemicals & Equipment, Inc.*, No. 15-CV-23142-KMV (S.D. Fla. April 11, 2017) (granting fees and costs amounting to one-third of the $1,550,000.00 settlement fund); *Guarisma v. ADCAHB Med. Coverages, Inc.*, Case No. 1:13-cv-21016 (S.D. Fla. June 24, 2015) (granting fees and costs amounting to one-third of the $4,500,000.00 settlement fund); *De Los Santos v. Millward Brown Inc.*, 13-cv-80670-DPG (S.D. Fla. 2015) (granting fees and costs amounting to one-third of gross recovery); *Matthew Benzion v. Vivint, Inc.*, 12-61826-CIV-ZLOCH (S.D. Fla. 2015) (grating fees and costs amounting to one-third of the $6,000,000 settlement fund); *In re Capital One Tel. Consumer Prot. Act Litig*, 2015 U.S. Dist. LEXIS 17120, *62 (N.D. Ill. Feb. 12, 2015) (analyzed dozens of TCPA class settlements throughout the country and determined that a risk adjusted fee structure would provide a fee of 36% for the first $10 million and then lower percentages after that).[5]

---

[4] *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403 (S.D. Tex. 1999) (35.1%); *see also Gaskill v. Gordon*, 942 F. Supp. 382, 387-88 (N.D. Ill. 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998) (finding that 33% is the norm, and awarding 38% of settlement fund); *In re Combustion, Inc.*, 968 F. Supp. 1116 (W.D. La. 1997) (36%); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (33.8 %); *In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494, 498 (D.D.C. 1981) (45%); *Beech Cinema, Inc. v. Twentieth-Century Fox Film Corp.*, 480 F. Supp. 1195, 1199 (S.D.N.Y. 1979), *aff'd*, 622 F.2d 1106 (2d Cir. 1980) (approximately 53%).

[5] *Martin v. Dun & Bradstreet, Inc. et al.*, No. 1:12-cv-00215 (N.D. Ill. Jan. 16, 2014) (Martin, J.) (Dkt. No. 63) (awarding one-third fee payment of distributed fund); *Cummings v Sallie Mae*, 12 C-9984 (N.D. Ill. May 30, 2014) (Gottschall, J.) (Dkt. No. 91) (awarding one-third of the common fund for fees); *Hanley v. Fifth Third Bank*, No. 1:12-cv-01612 (N.D. Ill. Dec. 23, 2013) (Castillo,

Analysis of the *Johnson* factors shows that the result obtained was excellent and Class Counsel would be justified in requesting a fee award below the 25% benchmark. Consequently, the attorneys' fee requested is appropriate and should be awarded.

### 2. This Is Not a Coupon Settlement Under CAFA.

The Court should grant attorney's fees based on the percentage of the fund because this is not a coupon settlement under CAFA, 28 U.S.C. § 1712. "Courts are required to apply heightened scrutiny to coupon settlements." *Johnson v. Ashley Furniture Indus.*, No. 13cv2445 BTM(DHB), 2016 U.S. Dist. LEXIS 29011, at *15 (S.D. Cal. Mar. 7, 2016). "Because Congress does not define the ambiguous term 'coupon' within the statute, . . . we may look to other interpretive tools, including the legislative history in order to determine the statute's best meaning." *Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*, 779 F.3d 934, 950 (9th Cir. 2015) (internal quotations omitted).

> In CAFA's findings and purposes, Congress emphasized its concern about settlements when class members receive little or no value, including settlements in which "counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value." Class Action Fairness Act of 2005, Pub. L. No. 109-2, § 2, 119 Stat. 4 (2005). The Senate Judiciary Committee's Report offers more detail, stating that congressional hearings have exposed class action settlements in which "class members receive nothing more than promotional coupons *to purchase more products from the defendants.*" S. Rep. No. 109-14, at 15 (2005). The report goes on to give twenty-nine examples of problematic coupon settlements. *Id.* at 15-20. The report cites and criticizes coupon settlement awards that provide class members with "$30 to $40 *discounts*" on a future cruise, "a $5 to $10 voucher *good for future purchases* of particular computer hardware or software products", "*$1 off every subsequent $5 purchase*" at a chain of restaurants, "*a 30 percent discount* on selected products" *during a one-week time period*, $55 to use on a purchase of a new crib from a defendant crib producer accused of making defective cribs, "$*1.25 off a $25 dollar [video] game*", and so on. *Id.* at 15-17.

*Id.* (emphasis added).

---

J.) (Dkt. No. 86) (awarding one-third of common fund); *Desai v. ADT Sec. Servs., Inc.*, No. 1:11-cv-01925 (N.D. Ill. June 21, 2013) (Bucklo, J.) (Dkt. No. 243) (approving payment of one-third of common fund); *Paldo Sign and Display Company v. Topsail Sportswear, Inc.*, No. 1:08-cv-05959 (N.D. Ill. Dec. 21, 2011) (Kennelly, J.) (Dkt. No. 116) (approving one-third of the settlement fund plus expenses); *CE Design Ltd. v. Cy's Crab House N., Inc.*, No. 1:07-cv- 05456 (N.D. Ill. Oct. 27, 2011) (Kennelly, J.) (Dkt. No. 424) (Dkt. No. 100) (same); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 1:07-cv-05953 (N.D. Ill. Nov. 1, 2010) (Kendall, J.) (Dkt. No. 146).

In *Resnick*, the Ninth Circuit found that the $12 voucher to Wal-Mart was not a coupon because it allowed the class members to purchase many whole items at the low-cost retailer without spending any of their own money. *Id.* (*accord Morey v. Louis Vuitton N. Am., Inc.*, No. 11cv1517 WQH (BLM), 2014 U.S. Dist. LEXIS 3331, at *23 (S.D. Cal. Jan. 9, 2014) ("A Class member would be able to use the Merchandise Certificate to acquire free merchandise, and would not be required to spend any additional money in order to realize the benefit of the settlement. The Court finds that the Merchandise Certificates are vouchers and not coupons, and CAFA does not apply."); *In re Bisphenol-A Polycarbonate Plastic Prods. Liab. Litig.*, No. 1967, 2011 U.S. Dist. LEXIS 50139, at *48 (W.D. Mo. May 10, 2011) ("The term 'coupon' is not statutorily defined, but the Court notes the vouchers provided in this case are unique in that they do not necessarily require the class members' expend money of their own in order to realize the benefits of the settlement. They are also unique in that they do not require class members to use the vouchers on the same (or even similar) products to those that gave rise to this litigation.").

Here, each class member is getting $101.03 in Coachways Credits. Coachways services are offered for less than $100.  Thus, depending on the length of the ride, each class member is potentially getting multiple free rides. As such, the class members are getting multiple free rides and they are not being forced to take credits for the same product that gave rise to this litigation since it is a TCPA case. Furthermore, the Coachways Credits shall not expire for a period of 2 years from the date of the Final Approval Order, shall be fully transferable, and can be used on multiple occasions until fully exhausted. Agreement ¶ 53. Thus, when analyzing the factors courts have considered in determining whether an item is a coupon or voucher, the overwhelming majority of the factors point to voucher, and thus, this Court should find that this is not a coupon settlement and CAFA does not apply.

Even if the Coachways Credits were coupons, this Court has already determined that a settlement that includes a cash and coupon option is not a coupon settlement governed by CAFA. *Mahoney v. TT of Pine Ridge, Inc.*, No. 17-80029-CIV-MIDDLEBROOKS, 2017 U.S. Dist. LEXIS 217470, at *22 (S.D. Fla. Nov. 17, 2017); *accord Lee v. Enter. Leasing Co.-West*, No. 3:10-CV-00326-LRH-WGC, 2015 U.S. Dist. LEXIS 64027, at *10 (D. Nev. May 15, 2015) ("The Court is therefore satisfied that the proposed settlement—which provides meaningful cash option to all class members—is not a coupon settlement.").

This case presents an even stronger argument than *Mahoney* for not being a coupon settlement because it did not force the class members to make a choice, but rather made $600,000.00 in cash available to all class members to make a claim, and provided the Coachways Credits automatically to all class members. Because the settlement provides a meaningful cash option to the class members and the Coachways Credits do not require the class members to spend any of their own money, this Court should find that settlement is not a coupon settlement and award Class Counsel its requested fees based on the percentage of the $2.6 million dollar fund created.

### 3. Alternatively, This Court Should Grant Attorney's Fees Based on Class Counsel's Lodestar and Add a Multiplier

In the event this Court determines that CAFA does apply, the Court should grant fees using the lodestar plus multiplier formula. "As CAFA's legislative history shows, this provision allows a district court to use the lodestar method to calculate a reasonable attorneys' fee award in cases involving "coupons;" the lodestar method compensates counsel based on time reasonably expended rather than on the value of the Class's recovery." *Perez v. Asurion Corp.*, 20 Fla. L. Weekly Fed. D1047 *4–5 (U.S. S.D. Fla. August 8, 2007). "CAFA also provides that the Court may award a multiplier of the lodestar to enhance the fee award under the appropriate circumstances." *Id.* at *5–6 (citing 28 U.S.C. § 1712(b)(2) ("Nothing in this subsection shall be construed to prohibit application of a lodestar with a multiplier method of determining attorney's fees"). "Under the lodestar method, the Court multiplies the number of hours that Class Counsel reasonably worked by a reasonable hourly rate." *Id.* at *8 (citing *Kay v. Apfel*, 176 F.3d 1322, 1324 (11th Cir. 1999)).

Here, Class Counsel has reasonably expended 496.75 hours of labor on this case at. This results in a lodestar of $226,115. As explained above, the *Johnson* factors show that the percentage of the fund requested by class counsel is appropriate. These same factors militate in favor of granting a multiplier in the amount of 2.2 due to the novelty and difficulty of the relevant questions; the skill required to properly carry out the legal services; the fact that Class Counsel took this case on an entirely contingent basis; the results obtained; the experience, reputation, and ability of the attorneys; the "undesirability" of the case; and fee awards in similar cases. *Camden I*, 946 F.2d at

772 n.3.[6] Thus, should this Court determine to use the lodestar method, the Court should find that a Class Counsel has a reasonable lodestar and apply a multiplier of 2.2%, resulting in a fee award of $494,000, which will also be used to cover reasonable attorney costs expended by class counsel of 9,239.10.

## VIII.    CONCLUSION

The securement of the $600,000.00 Cash Benefit, $2,000,000.00 in Coachways Credits, and the fees and costs associated with the Notice Program and Settlement Administration represents a very good result given the obstacles confronted in this Action.  The Settlement more than satisfies the fairness and reasonableness standard of Rule 23(e), as well as the class certification requirements of Rules 23(a) and (b)(3).  Further, Class Counsel's request for a Service Award for the Plaintiff and the application for attorneys' fees and expenses is reasonable under all the circumstances.  The fee request satisfies the guidelines of *Camden I* given the results achieved, the notable litigation risks, the extremely complicated nature of the factual and legal issues, and the time, effort and skill required to litigate claims of this nature to a satisfactory conclusion.

Accordingly, Plaintiff and Class Counsel respectfully request that this Court: (1) grant Final Approval to the Settlement and enter the proposed order attached as *Exhibit D*; (2) certify for settlement purposes the Settlement Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(e); (3) appoint Jessica Dipuglia as Class Representative; (4) appoint as Class Counsel the law firms and attorneys listed in paragraph 14 of the Agreement; (5) approve the requested Service Award in the amount of $5,000; (6) award Class Counsel attorneys' fees in the amount of nineteen percent of the Settlement Fund, which includes the reimbursement of expenses in the amount of $9,239.10; and (7) enter Final Judgment dismissing the Action with prejudice.

Dated: July 23, 2018.

---

[6] Not all the Johnson factors are analyzed in determining the multiplier because "many of the *Johnson* factors are subsumed within the initial calculation of hours reasonably expended at a customary hourly rate." *Camden I*, 946 F.2d at 772. These include factors such as the time and labor required; the customary fee; and time limitations imposed by the client or circumstances.

Respectfully submitted,

| | |
|---|---|
| **KOPELOWITZ OSTROW FERGUSON WEISELBERG GILBERT** | **HIRALDO P.A.** |

**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**

/s/ Scott Edelsberg
Jeffrey M. Ostrow, Esq.
Florida Bar No. 121452
ostrow@kolawyers.com
Scott A. Edelsberg, Esq.
Florida Bar No. 100537
edelsberg@kolawyers.com
1 W. Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
(t) 954-449-4602
*Counsel for Plaintiff and the Class*

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis, Esq.
Florida Bar No. 101754
*efilings@sflinjuryattorneys.com*
14 NE 1st Avenue, Suite 400
Miami, Florida 33132
(t) (305) 479-2299

**HIRALDO P.A.**
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301

mhiraldo@hiraldolaw.com
Telephone: 954.400.4713

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this July 23, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I also certify that the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Scott Edelsberg
Scott A. Edelsberg, Esq.
Florida Bar No. 100537
edelsberg@kolawyers.com
1 W. Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301